UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYTAIRA GREEN,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

Case No. 17-13528

Marianne O. Battani
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 10)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On October 30, 2017, plaintiff Sytaira Green, filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Marianne O. Battani referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying Green's claim for

disability benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 9, 10).  Green also filed a reply in support of her motion

for summary judgment.  (Dkt. 11).

B.      Administrative Proceedings

Green filed an application for a period of disability and disability insurance benefits on November 5, 2014, alleging disability beginning on October 27, 2012. (Tr. 21).[1]  The claims were initially disapproved by the Commissioner on January 16, 2015.  (Tr. 21).  Green requested a hearing and on June 30, 2016, she appeared with counsel before Administrative Law Judge (ALJ) Melody Paige, who considered the case *de novo*.  (Tr. 32-53).  In a decision dated November 15, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 18-26).  Green requested a review of this decision and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 13, 2017, denied plaintiff's request for review.  (Tr. 5-10); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

2

## II.    FACTUAL BACKGROUND

Green was 53 years old on the alleged disability onset date.  (Tr. 54).  She stopped working at her janitorial job because her knees were bothering her, and it was becoming harder for her to walk around and do her job.  (Tr. 37).  She has a high school education and lives with her husband and six children.  (Tr. 38).  She has past relevant work experience as a janitor.  (Tr. 23).  Green's application is based on her claims that her right knee pain, degenerative joint disease, hypertension, and anemia impair her ability to work.  (Tr. 125).

The ALJ applied the five-step disability analysis and found at step one that Green had not engaged in substantial gainful activity since the alleged onset date. (Tr. 22).  The ALJ found that Green has the following medically determinable impairments: depressive disorder, anxiety disorder, degenerative arthritis affecting her right knee, status post diverticulitis, microcytic anemia, chronic sinusitis, GERD, colitis, vitamin D deficiency, and chronic tonsillitis.  (Tr. 22).  At step two, the ALJ found that Green does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) her ability to perform basic work-related activities for 12 consecutive months; and therefore, she does not have a severe impairment or combination of impairments within the meaning of step 2.  (Tr. 22).  Therefore, the ALJ found that Green was not disabled from the alleged onset date through the date of the decision.  (Tr. 26).

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

     B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartzyel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform. (*Id*.). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

          1.    Step Two

Green asserts that the ALJ's failure to find any severe impairment at step two is an error because the evidence in the record supports her claim that the osteoarthritis in her knees is severe.  Green points to x-rays taken in 2014 showing moderately advanced degenerative arthritis (Tr. 218); a December 15, 2014 orthopedic treatment note documenting right knee osteoarthritis with medical compartmenting being more severe, and prescribing physical therapy and Voltaren (Tr. 219-220); an October 22, 2015 orthopedic treatment note documenting bilateral knee osteoarthritis, treating with cortisone injections and Voltaren (Tr. 408-409); and an April 21, 2016 orthopedic treatment note documenting severe bilateral valgus knee osteoarthritis and recommending physical therapy and braces (Tr. 426-427).  Green also points to the state agency medical consultant's opinion, which found her osteoarthritis to be a severe impairment, limiting Green to a light RFC and additional postural restrictions.  (Dkt. 57-60).  Green argues that the foregoing evidence unequivocally demonstrates that her osteoarthritis is a severe impairment and thus, on remand, the ALJ must evaluate steps three through five.

In response, the Commissioner argues that substantial evidence supports the ALJ's step two finding because the ALJ carefully considered the medical findings related to Green's medically determinable impairments and made an informed judgment about the limitations and restrictions that Green's medically determinable impairments and symptoms impose on her ability to do basic work activities.  More specifically, the Commissioner contends that the facts here are indistinguishable from those presented in *Long v. Apfel*, 1 Fed. Appx. 326, 330-31 (6th Cir. 2001).  In *Long*, the plaintiff alleged disability because of several medically determinable impairments.  *Long*, 1 Fed. Appx. at 327.  Despite the plaintiff's significant treatment history, the record in *Long* did "not contain a single statement by a treating physician indicating that Long's health problems result[ed] in any specific work-impairing limitations."  *Id*. at 332.  The only medical evidence suggesting that the plaintiff had a severe impairment was an opinion from a State agency reviewing physician, which concluded that the plaintiff could perform medium level work.  *Id*. at 328, 332.  Nevertheless, the ALJ found that the plaintiff did not have a severe impairment and the Sixth Circuit affirmed that finding.  *Long*, 1 Fed. Appx. at 334.

The Commissioner contends that, just as in *Long*, there is no medical evidence from a treating or examining source stating that Green's medically determinable impairments result in any specific work-related functional

limitations.  Rather, according to the Commissioner, the record is replete with

normal physical exams and Green's denial of pain symptoms.  For example:

- In October 2014, a review of systems was negative for musculoskeletal complaints, and a physical exam revealed that Plaintiff had normal range of motion, strength, and gait; and no tenderness, swelling, or deformity (Tr. 210‒11);

- Later that same month, a review of systems was again negative for musculoskeletal complaints, and a physical exam once again showed Plaintiff had normal range of motion, strength, and gait; and no tenderness, swelling, or deformity (Tr. 214–15);

- In December 2014, a review of systems was positive for joint pain, but Plaintiff had full active range of motion and did not walk with an assistive device; her doctor recommended physical therapy (Tr. 219–21);

- In January, February, and March 2015, reviews of systems were negative for musculoskeletal complaints, and physical exams showed that Plaintiff had normal range of motion, strength, and gait; and no tenderness, swelling, or deformity (Tr. 247–48, 262, 353, 358);

- At several medical appointments in April 2015, Plaintiff denied joint pain, muscle tenderness, stiffness, or swelling (Tr. 364, 368, 371, 380).  In fact, Plaintiff denied pain at medical appointments January, April, June, and August 2015 (see id.; see also Tr. 233, 239);

- In April 2015, Plaintiff told her doctor that she attended one physical therapy session in three months and she described her pain as "minimal" (Tr. 380).  Plaintiff stated that she controlled her pain with over-the-counter medication as needed, and she did not complain of knee instability (id.).  A physical exam revealed full range of motion and no signs of instability (Tr. 381);

- By June 2015, Plaintiff reported that physical therapy and medication were helping to control her pain, and her doctor commented that she had not yet exhausted conservative treatment options (Tr. 396);

- And by January 2016, Plaintiff reported that she "felt great" after a cortisone injection, and that her pain symptoms were "pretty well controlled" (Tr. 242). A physical exam showed full active knee extension and flexion with active range of motion and adequate strength (Tr. 425).

In *Long*, the Sixth Circuit noted that notwithstanding the plaintiff's significant medical history, the plaintiff progressed well and her ailments were either resolved or treated with only over-the-counter medication. *See Long*, 1 Fed. Appx. at 332. The Commissioner suggests that the plaintiff's treatment history in that case was far more extensive than here. In *Long*, the plaintiff underwent spinal taps to drain spinal fluid, and she eventually had a shunt placed in her spinal cord to drain spinal fluid on an ongoing basis. *See id*. at 327-28. After surgery to insert the shunt, the plaintiff reported improvement, but continued to complain of pain in her abdomen and headaches. *See id*. at 328. But at subsequent medical appointments, examinations revealed "nothing unusual," and the plaintiff's doctors commented that the plaintiff experienced only minor break-through pain that was treated with Aleve. *See id*. at 328–29. Thus, the Commissioner posits that as in *Long*, the record in this case reveals that Green had medically determinable impairments, which the ALJ specifically acknowledged; however, Green's course of treatment demonstrates that she frequently denied pain symptoms, over-the-counter medication and other conservative treatment helped to control her symptoms, and physical exams frequently reflected normal findings. *See Crady v.*

*Sec'y of Health & Human Servs.*, 835 F.2d 617, 620-21 (6th Cir. 1987) (affirming that claimant did not have severe knee impairment where objective findings showed only minor degenerative changes and claimant had no restricted range of motion). In *Long* and *Crady*, the Sixth Circuit found that similar evidence supported the ALJ's finding that the plaintiff did not have a severe impairment. *See Long*, 1 Fed. Appx. at 332; *Crady*, 835 F.2d at 620-21.

The Commissioner also urges the Court to reject Green's argument that the ALJ failed to "reconcile" her decision with the state agency opinion that she had a severe impairment. According to the Commissioner, while the ALJ was responsible for reviewing the State agency physician's opinion, the ALJ was not bound by that opinion. See 20 C.F.R. § 404.1527(e)(2), (e)(2)(i) (2016). And, the ALJ considered the State agency opinion and agreed that Green had medically determinable impairments. (Compare Tr. 22 with Tr. 57 (opining Plaintiff had medically determinable impairment of osteoarthritis and allied disorders).) However, the ALJ departed from the State agency physician's opinion that Green's impairments were severe. *See Smith v. Comm'r of Soc. Sec.*, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) ("[T]here is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."). In *Smith*, the court addressed a similar situation in the context of the ALJ's RFC

13

assessment.  *Smith*, 2013 WL 1150133, at *11.  There, the ALJ gave the State agency opinion "significant weight" because of its consistency with the evidence but did not adopt all the opinion's functional limitations in the RFC determination. *Id*.  Nevertheless, the district court found that the ALJ was not required to explain why he did not adopt certain limitations, and even without those limitations, substantial evidence supported the ALJ's RFC finding.  *See id*.  Here, the ALJ afforded the State agency opinion only "some weight."  (Tr. 24).  According to the Commissioner, the ALJ's decision makes it apparent why she departed from the State agency physician's conclusions: the objective medical evidence, Green's conservative course of treatment, and the amelioration of Green's symptoms all militated against a finding that she had a severe impairment. (Tr. 23-25). Therefore, the Commissioner maintains that any "discrepancy" between the State agency opinion and the ALJ's findings was adequately reconciled by the ALJ's discussion of the relevant evidence.

The undersigned finds no error.  At step two of the sequential evaluation process, the ALJ must consider whether a claimant's medically determinable impairment(s) are severe impairments and whether the impairment(s) meet the twelve-month durational requirement in 20 C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec*., 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a

severe medically determinable physical or mental impairment . . . that meets the durational requirement in § 404.1509 . . . , or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled.").  The applicant bears the burden of establishing the existence of objective medical evidence within the administrative record suggesting that the applicant was "disabled" as defined by the Act.  In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.

In *Higgs v. Bowen*, the Sixth Circuit found that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  880 F.2d 860, 862 (6th Cir. 1988).  The *Higgs* court observed that "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable

15

practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Id*.  At the same time, the court also recognized that "Congress has approved the threshold dismissal of claims obviously lacking medical merit...." *Id*.  That is, "the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863.  The *Higgs* court approved of that practice and affirmed dismissal because the record contained no objective medical evidence to support the plaintiff's claims of severe impairment. The *Higgs* court observed that "[t]he mere diagnosis of [an ailment], of course, says nothing about the severity of the condition." *Id*; *see also Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) (citations omitted) (Nonetheless, not all impairments are severe: "The mere existence of ... impairments ... does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time.").

As observed in *Sponsler v. Comm'r of Soc. Sec.*, 2018 WL 1173019, *8 (N.D. Ohio Mar. 6, 2018), since *Higgs*, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment if the medical evidence contains no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition.  *See e.g.*, *Long*, 1 Fed. Appx. at 332; compare *Maloney v. Apfel*, 2000 WL 420700 at *2, (6th Cir. 2000)

(*per curiam*) (finding substantial evidence to support denial when record indicated claimant showed symptoms and was diagnosed with disorder but did not contain evidence of a disabling impairment that would prevent work); and *Foster v. Secretary of Health & Human Svcs*., 1990 WL 41835 at *2 (6th Cir. 1990) (per curiam) (finding substantial evidence to support denial when the claimant produced no evidence regarding the frequency, intensity, and duration of arthritic pain; the record indicated that he was no more than slightly or minimally impaired); with *Burton v. Apfel*, 2000 WL 125853 at *3 (6th Cir. 2000) (reversing finding of no severe impairment because record contained diagnoses and remarks from a number of treating physicians and psychologists to the effect that claimant was "'unable to work...due to the complexity of her health problems'" (quoting physician)); and *Childrey v. Chater*, 1996 WL 420265 at *2 (6th Cir. 1996) (per curiam) (reversing finding of no severe impairment because record contained an assessment by a consulting physician reflecting a variety of mental problems that left her "'not yet able to really care for herself alone,'" reports of two other physicians corroborating this, consistent testimony from the claimant, and no medical evidence to the contrary (quoting physician)).

In this case, the record evidence does not suggest that Green's osteoarthritis actually impacts her ability to perform basic work activities. While there is no dispute that Green suffers from osteoarthritis and has received conservative

treatment for this condition, the medical evidence here contains no information regarding any physical limitations or the intensity, frequency, and duration of the pain associated with Green's condition. *See e.g.*, *Long*, 1 Fed. Appx. at 332. Yet, as accurately described by the Commissioner above, the record is replete with references to Green's pain being well-controlled by over-the-counter or prescription anti-inflammatory medication and Green not wanting any treatment beyond physical therapy and anti-inflammatory medication. As the ALJ discussed, Green's report of her daily activities – helping children get ready for school, preparing meals, managing finances, helping children with their homework, taking care of her own personal needs and those of her children, doing light household chores with her husband's help, driving, keeping appointments, shopping, reading, watching TV, and regularly attending church services – is not suggestive of having a severe impairment that impacts her ability to work. (Tr. 23-24). Green also repeatedly presented at doctor's appointments with normal posture, gait, and motor function; reported minimal pain; and denied instability in her knee. (Tr. 24). Though she complained of worsening knee pain and received cortisone injections on one occasion, she also reported being in the process of adopting two young children. *Id*. Green declined further injections and continued to treat conservatively. *Id*. Notably, Green's physician did not opine on her residual functional capacity or otherwise provide any opinion regarding how Green's

condition impacted her ability to perform any basic work functions.  (Tr. 25).

While the ALJ's observation that Green attended only one physical therapy

sessions appears to be in error (*see* Tr. 396), he correctly observes that no treating

physician suggested she was limited to light or sedentary work.  (Tr. 25).  The

undersigned concludes that the ALJ's decision that Green's osteoarthritis was not a

severe impairment because nothing in the record suggests that this condition

affected her ability to perform basic work activities is supported by substantial

evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED** and that defendant's motion

for summary judgment be **GRANTED**, and that the findings of the Commissioner

be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

19

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 31, 2019                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on January 31, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov